IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHELLE JONES,
    *Plaintiff*,

v.

AETNA LIFE INSURANCE COMPANY
    *Defendant*.

Civil Action No. ELH-19-1413

**MEMORANDUM OPINION**

In this Memorandum, the Court resolves a motion to enforce a settlement agreement.

Plaintiff Michelle Jones, who is self-represented, filed suit against "Amazon Corp. LLC" ("Amazon"). ECF 1 (the "Complaint"). Although the basis of the suit is difficult to discern, it appears that Jones was an employee of Amazon, and she was dissatisfied with the disposition of a "Long Term Disability Claim." *Id.* at 6. The disability benefits arise under an employee welfare benefit plan, which is governed by the Employee Retirement Income Security act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq. ECF 1-1.[1]

The case was initially assigned to U.S. Magistrate Judge J. Mark Coulson. On July 1, 2019, he granted a consent motion to substitute Aetna Life Insurance Company ("Aetna") as the defendant, and to dismiss the suit as to Amazon. ECF 11.

Thereafter, on August 16, 2019, Aetna filed a "Notice Of Settlement." ECF 14. Then, on September 3, 2019, defendant filed a motion to enforce the settlement agreement. ECF 19. The motion is supported by a memorandum of law (ECF 19-1) (collectively, the "Motion") and five exhibits. ECF 19-2 to ECF 19-6. Plaintiff opposes the Motion. ECF 26 (the "Opposition"). In

---

[1] Plaintiff asserts jurisdiction based on diversity of citizenship, not federal question jurisdiction. *See* ECF 1-1.

essence, she explains that she has changed her mind about the settlement because she has since learned that she may need additional medical treatment. She included a medical record. ECF 26-1. Defendant has replied (ECF 29) and has submitted an additional exhibit. ECF 29-1.

On September 9, 2019, during the briefing of the Motion, the case was reassigned to me. *See* Docket.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Factual and Procedural History

On May 14, 2019, plaintiff filed suit, complaining about the disposition of her claim for long-term disability benefits. ECF 1. Jones asserted, *id.* at 6:

> I received a letter from Aetna Group dated February 2019 stating a final decision had been made in ref. to my long term disability claim. Informing my payments/benefits was terminated January 6, 2019. The reason given was lack of medical evidence to not be able to perform/return to work.
>
> I sent Amazon via Aetna my doctor note which states I am unable to work through Oct. 30, 2019.
>
> I am asking for my benefits to be continued and any past money from Jan. 6, 2019 going forward to be paid to me immediately.

By way of relief, Jones requests, *id.* at 7:

> I would like money due me from 1/6/2019 through my doctor's note date of me unable to work of 10/30/19 and any punitive or exemplary damage amounts I am entitled to at this time. This has caused me dire financial strain.

As noted, Aetna filed a Notice Of Settlement on August 16, 2019. ECF 14. And, on September 3, 2019, Aetna filed an Answer to the suit (ECF 16), asserting, *inter* alia, that the parties had "reached a binding settlement…." *Id.* at 1. On the same date, Aetna filed the Motion.

In the Motion, Aetna claims that the parties reached a settlement on July 17, 2019. ECF 19 at 1; ECF 19-3 at 3; ECF 19-2 (Affidavit of Aaron Pohlmann, Esquire), ¶ 3. According to Aetna,

2

"[i]n exchange for a settlement payment, Plaintiff executed a release in late July 2019," and she agreed to "take any and all action necessary to effect dismissal of this case with prejudice." ECF 19 at 1; *see also* ECF 19-2, ¶ 5; ECF 19-4 (Release). Aetna asserts that it delivered the settlement check to plaintiff on August 2, 2019 (ECF 19-2, ¶ 6), and plaintiff subsequently negotiated the check. ECF 19-5; *see also* ECF 19-2, ¶ 6.

Aetna explains that, "[a]fter Plaintiff received the settlement check, counsel for Aetna prepared a Notice of Dismissal with Prejudice, and asked Plaintiff to file it in accordance with the parties' agreement." ECF 19 at 2; ECF 19-2, ¶ 7. Aetna recounts that on August 12, 2019, Jones called defense counsel and left a voicemail message "saying she would file the Notice of Dismissal on August 14, 2019." ECF 19-2, ¶ 9. However, Jones failed to do so. ECF 19 at 2; ECF 19-2, ¶ 11. Aetna subsequently attempted to contact Jones on several occasions, without success. ECF 19-2, ¶ 10.

Aetna submitted various emails as exhibits. On July 17, 2019, defense counsel wrote to plaintiff, confirming his telephone conversation with her on that date. ECF 19-3 at 2-3. Counsel stated, *id.* at 3: "I conferred with Aetna and they have agreed to resolve this matter on the terms we discussed earlier – payment of [redacted ….]." Further, counsel said, *id.* at 3: "In exchange, Aetna will need [plaintiff] to sign a release and then dismiss [the] lawsuit 'with prejudice, *which means it cannot be re-filed later*." *Id.* (emphasis added). Counsel also advised that, upon receipt of "the signed and notarized release," Aetna would issue the settlement check. *Id.* A short time later, plaintiff responded, "Thank You. I am awaiting the documents for my signature." *Id.* at 2.

The following day, July 18, 2019, counsel for Aetna sent the Release to plaintiff, via email. *Id.* Counsel also requested Jones's mailing address for the purpose of processing the settlement check. *Id.*

Jones signed the Release on July 23, 2019, and had it notarized. ECF 19-4 at 6. The Release states, in part, *id.*:[2]

### RELEASE

\* \* \*

**Voluntary Dismissal with Prejudice.** Concurrently with the execution of this Release, **RELEASOR** authorizes and directs her counsel to prepare and file a dismissal of the Lawsuit and all related matters with prejudice and take any and all actions necessary to effect such dismissal.[3]

Further, the Release provides, in part, that plaintiff "expressly agrees to release, acquit and forever discharge" Aetna as follows, ECF 29-1 at 2:

> Any and all past, present or future claims, actions, causes of action, rights, damages, costs, losses, expenses, judgments, demands, obligations, interest and compensation, of every kind and nature whatsoever, known or unknown, foreseen or unforeseen, in law or in equity, including for bad faith (common law or statutory), attorney's fees and costs, including, but not limited to any and all claims arising out of, involving or relating to (1) those that may in any way relate to or are the subject of a lawsuit brought by **RELEASOR** in the United States District Court for the District of Maryland, styled *Michelle Mable Jones v. Amazon Corporate, LLC*, Civil Action File No. 1:19-CV-01413-JMC ("the Lawsuit"); (2) **RELEASOR'S** claims for past, present and future benefits under a group policy of insurance issued to Amazon Corporate LLC, policy number GP-866242-GI ("the Policy"); (3) the Plan; and (4) the Policy.

> Moreover, **RELEASOR'S** right to any past, present, and/or future long-term disability benefits under the Plan is hereby forever extinguished.

> **RELEASOR** acknowledges and agrees that this Release is a general release.

> **RELEASOR** expressly waives and assumes the risk of any and all claims for damages which exist as of this date, but of which the **RELEASOR** does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect **RELEASOR'S** decision to enter into this Release. **RELEASOR** further agrees that **RELEASOR** has accepted payment of the sum specified herein as a complete compromise of matters

---

[2] Aetna filed two copies of the Release, with varying degrees of redaction.

[3] It does not appear that plaintiff had a lawyer. Clearly, this was a form document.

involving disputed issues of fact. RELEASOR assumes the risk that the facts or law may be other than what **RELEASOR** believes.

In accordance with the parties' agreement, Aetna issued the settlement check on July 25, 2019. ECF 19-5 at 2. On July 30, 2019, counsel for Aetna emailed Jones and informed her that the settlement check would be "overnight[ed]" to her, once counsel received it. ECF 19-6 at 3. Aetna sent the check to plaintiff by Federal Express on July 31, 2019. *Id.* at 2. Of import here, Jones endorsed and negotiated the settlement check, in the sum of $6,000. ECF 19-5 at 2; ECF 26 at 1.

On August 5, 2019 and August 12, 2019, Aetna's attorney sent a Notice of Dismissal with prejudice to plaintiff, and asked her to file it, as agreed. *See* ECF 19-6 at 2, 3. He also invited plaintiff "to call to discuss at [her] convenience." *Id.* at 3. By email of August 12, 2019, counsel inquired about the status of the dismissal. *Id.* at 3. And, he told Jones that Aetna required the filing of the Notice Of Dismissal by August 14, 2019. *Id.* According to Aetna, Jones contacted Aetna's attorney sometime before August 15, 2019, and left a voicemail, apparently indicating that she would file the Notice Of Dismissal on August 14, 2019. *See id.* at 2.

On August 15, 2019, Aetna's lawyer attempted to follow up with Jones, via email. *Id.* And, on August 19, 2019, counsel emailed Jones, asking her to file the Notice Of Dismissal no later than that week. *Id.* Defense counsel also informed Jones that if she did not file the Notice Of Dismissal, Aetna would "have no alternative but to ask the Court to enforce the parties' settlement agreement and dismiss the lawsuit." *Id.*

Notably, Jones does not dispute the facts recounted by Aetna. Rather, in her Opposition, Jones states, ECF 26 at 1-2 (emphasis added):

> I Michelle Jones wish to oppose the motion to enforce a settlement agreement reached on July 17, 2019 with Aetna to dismiss the case no. listed above. *I have since had additional medical evidence indicating I may need additional medical treatment for at least an additional year.* Pursuant to my physician. Which I have

5

attached. . . Michelle Jones would like my prior benefits of $1,238.51 per month reinstated less the $6,000 previously paid to me by Aetna regarded as back money due from January 2019 to present.

With her Opposition, Jones submitted a medical record from Madison Weinman, CRNP, dated September 24, 2019. ECF 26-1. The report reflects that plaintiff was initially seen on December 18, 2017, for neuropathy and cervical/foraminal stenosis. *Id.* And, of relevance here, that record also reflects that plaintiff had a medical visit on September 27, 2019, *i.e.*, *after* the settlement agreement had been reached. The report also indicates that Jones's impairment "is expected to last" until September 27, 2020. ECF 26-1 at 1-2. This medical visit, which took place after plaintiff executed the Release and cashed the settlement check, appears to be the impetus for plaintiff's desire to renege on the settlement agreement.

## II.    Discussion

### A.

A district court has "inherent authority deriving from [its] equity power, to enforce settlement agreements." *Hensley v. Alcon Labs, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002); *see Williams v. Prof'l Transp., Inc.*, 388 F.3d 127, 131-32 (4th Cir. 2004). A "'court must first ascertain whether the parties have in fact agreed to settle, and then discern the terms of that settlement.'" *Copeland v. Dapkute*, PWG-17-cv-1566, 2018 WL 5619672, at *4 (D. Md. Oct. 30, 2018) (quoting *Power Servs., Inc. v. MCI Constructors, Inc.*, 36 F. App'x 123, 125 (4th Cir. 2002) (per curiam)) (internal citation omitted).

An evidentiary hearing is not always necessary, however. In *Swift v. Frontier Airlines, Inc.*, 636 F. App'x 153 (4th Cir. 2016) (per curiam), the Fourth Circuit explained, *id.* at 156:

> If there is a substantial factual dispute over either the agreement's existence or its terms, then the district court must hold an evidentiary hearing. If, however, a settlement agreement exists and its terms and conditions can be determined, as long

6

as the excuse for nonperformance is comparatively unsubstantial, the court may enforce the agreement summarily.

See also Hensley, 277 F.3d at 541 (recognizing that, "[i]f there is a factual dispute over the existence of an agreement" or its terms, the court may not enforce a settlement agreement summarily." Hensley, 277 F.3d at 541 (emphasis in original); Copeland, 2018 WL 5619672, at *4 n.5.

In this case, neither the existence of the agreement nor its terms are in dispute. Therefore, no hearing is needed.

Plaintiff alleges jurisdiction based upon diversity of citizenship. In a diversity action, a federal court must apply the substantive law of the state in which it sits, including that state's choice of law rules as to contracts. Klaxon Co. v. Stentor Elect. Mfg. Co., 313 U.S. 487, 496-97 (1941).

"A settlement agreement is nothing more or less than a contract." Copeland, 2018 WL 5619672, at *4; see Topiwala v. Wessell, 509 F. App'x 184, 186 (4th Cir. 2013) (per curiam). In a contract claim, Maryland courts follow the rule of lex loci contractus, applying the substantive law of the state where the contract was formed, unless there is a choice-of-law provision in the contract. Erie Ins. Exch. v. Heffernan, 399 Md. 598, 925 A.2d 636, 648-49 (2007); Am. Motorists Ins. Co. v. ARTRA Group, Inc., 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); see also Cunningham v. Feinberg, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015); Lewis v. Waletzky, 422 Md. 647, 657 n.8, 31 A.3d 123, 129 n.8 (2011). Because Jones executed the Release in Maryland (ECF 19-4 at 6), I will apply Maryland law.

"Motions to enforce settlement agreements draw upon standard contract principles." Bradley v. Am. Household Inc., 378 F.3d 373, 380 (4th Cir. 2004); see Lopez v. XTEL Const. Grp., LLC, 796 F. Supp. 2d 693, 699 (D. Md. 2011). Under Maryland law, a settlement agreement "is

a contract between two parties which is conditioned upon the court's acceptance of its terms." *In re Blessen H.*, 392 Md. 684, 715 n.6, 898 A.2d 980, 999 n.6 (2006). Thus, "'[s]ettlement agreements are enforceable as independent contracts, subject to the same general rules of construction that apply to other contracts'" and, "'[a]s long as the basic requirements to form a contract are present, there is no reason to treat such a settlement agreement differently than other contracts which are binding.'" *Erie Ins. Exchange v. Estate of Reeside*, 200 Md. App. 453, 461, 28 A.3d 54, 58 (2011) (citations and some internal quotation marks omitted); *see Copeland*, 2018 WL 5619672, at *5 (quoting *Hayward v. Brown*, PWG-15-3381, 2017 WL 2117364, at *2 (D. Md. May 16, 2017), *aff'd*, 696 F. App'x 102 (4th Cir. 2017) (per curiam) (internal quotation omitted).

In general, "settlement agreements are desirable and should be binding and enforceable." *Chernick v. Chernick*, 327 Md. 470, 481, 610 A.2d 770, 775 (1992). In Maryland, "[t]he policy of encouraging settlement is so important that, even when the parties later discover that the settlement may have been based on a [unilateral] mistake, settlement agreements will not be disturbed." *Nationwide Mut. Ins. Co. v. Voland*, 103 Md. App. 225, 237, 653 A.2d 484, 491 (1995). Of particular relevance here, "[h]aving second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." *Hensley*, 277 F.3d at 540 (internal citations omitted); *see Lopez*, 796 F. Supp. 2d at 699. Moreover, "courts should not meddle in the affairs of the parties by modifying terms of the agreement to assist a disadvantaged party." *Baltrotsky v. Kugler*, 395 Md. 468, 480, 910 A.2d 1089, 1096 (2006); *see Walther v. Sovereign Bank*, 386 Md. 412, 429-30, 872 A.2d 735, 746 (2005). In the absence of "'fraud, duress, mistake, or some countervailing public policy,'" a party who voluntarily agrees to the terms of a contract is bound by it. *Baltrotsky*, 395 Md. at 480, 910 A.2d at 1097 (citation omitted).

To the extent that the issue is governed by federal law rather than Maryland law, federal decisions are to similar effect. In *Ohio Valley Envir. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 211 (4th Cir. 2009), for example, the Court said: "Settlement agreements operate on contract principles, and thus the preclusive effect of a settlement agreement 'should be measured by the intent of the parties.'" (Citation omitted); *see also Hensley*, 277 F.3d at 540 (stating that "resolution of a motion to enforce a settlement agreement draws on standard contract principles," although "it may be accomplished within the context of the underlying litigation without the need for a new complaint").

**B.**

In general, a contract is defined as "a promise or set of promises for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." RICHARD A. LORD, 1 WILLISTON ON CONTRACTS § 1:1, at 2-3 (4th ed. 1990); *accord* Restatement (Second) Contracts § 1, at 5 (1981); *see also Maslow v. Vanguri*, 168 Md. App. 298, 321, 896 A.2d 408, 421-22, *cert. denied*, 393 Md. 478, 903 A.2d 416 (2006). Of relvance here, "'[a] contract is formed when an unrevoked offer made by one person is accepted by another.'" *Cty. Comm'rs for Carroll Cty. v. Forty W. Builders, Inc.*, 178 Md. App. 328, 377, 941 A.2d 1181, 1209 (2008) (quoting *Prince George's County v. Silverman*, 58 Md. App. 41, 57, 472 A.2d 104, 112 (1984)). Thus, mutual assent is an integral component of every contract. *See, e.g.*, *Joseph Saveri Law Firm Inc. v. Michael E. Criden, P.A.*, 759 Fed. Appx. 170 (4th Cir. 2019) (recognizing as a "bedrock principle of law" that an offeree must accept an offer to form a contract); *Cochran v. Norkunas*, 398 Md. 1, 14, 919 A.2d 700, 708 (2007); *Advance Telecom Process LLC v. DSFederal, Inc.*, 224 Md. App. 164, 177, 119 A.3d 175, 183 (2015).

In determining whether there is an enforceable contract, a court begins the analysis by

9

considering "the essential prerequisite of mutual assent to the formation of a contract . . . ." *Falls Garden Condo. Ass'n, Inc. v. Falls Homeowners Ass'n, Inc.*, 441 Md. 290, 302, 107 A.3d 1183, 1189 (2015); *see also Mitchell v. AARP*, 140 Md. App. 102, 116, 779 A.2d 1061, 1069 (2001) ("An essential element with respect to the formation of a contract is 'a manifestation of agreement or mutual assent by the parties to the terms thereof; in other words, to establish a contract the minds of the parties must be in agreement as to its terms.'" (citations omitted)). "Manifestation of mutual assent includes two issues: (1) intent to be bound, and (2) definiteness of terms." *Cochran*, 398 Md. at 14, 919 A.2d at 708.

A contract may be oral or written, as well as express or implied. "'An express contract has been defined as an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing.'" *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 706, 114 A.3d 676, 688 (2015) (quoting *Cty. Comm'rs of Caroline Cty v. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94, 747 A.2d 600, 606 (2000)). Whether oral or written, a contract must express with certainty the nature and extent of the parties' obligations and the essential terms of the agreement. *Forty W. Builders*, 178 Md. App. at 377-78, 941 A.2d at 1209-10; *see Canaras v. Lift Truck Services*, 272 Md. 337, 346, 322 A.2d 866, 871 (1974). If an agreement omits an important term, or is otherwise too vague or indefinite with respect to an essential term, it is not enforceable. *Mogavero v. Silverstein*, 142 Md. App. 259, 272, 790 A.2d 43, 51 (2002); *see L & L Corp. v. Ammendale*, 248 Md. 380, 385, 236 A.2d 734, 737 (1967); *Schloss v. Davis*, 213 Md. 119, 123, 131 A.2d 287, 290 (1956) (stating that a "contract may be so vague and uncertain as to price or amount as to be unenforceable").

"'The cardinal rule of contract interpretation is to give effect to the parties' intentions.'" *Dumbarton Imp. Ass'n. Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 51, 73 A.3d 224, 232

(2013) (citation omitted). If the contract is in writing, courts look first to the written language of the contract in order to determine the parties' intention. *Walton v. Mariner Health of Maryland, Inc.*, 391 Md. 643, 660, 894 A.2d 584, 594 (2006) ("[G]enerally, when seeking to interpret the meaning of a contract our search is limited to the four corners of the agreement."); *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assoc. Ltd. P'ship*, 109 Md. App. 217, 291, 674 A.2d 106, 142 (1996) ("[T]he court must, as its first step, determine from the language of the agreement what a reasonable person in the position of the parties would have meant at the time the agreement was effectuated."), *aff'd,* 346 Md. 122, 695 A.2d 153 (1997).

Under Maryland law, the interpretation of a contract is "ordinarily a question of law for the court." *Grimes v. Gouldmann*, 232 Md. App. 230, 235, 157 A.3d 331, 335 (2017); *see also Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 7, 98 A.3d 264, 268 (2014); *Myers v. Kayhoe*, 391 Md. 188, 198, 892 A.2d 520, 526 (2006); *Towson Univ. v. Conte*, 384 Md. 68, 78, 862 A.2d 941, 946 (2004); *Lema v. Bank of Am., N.A.*, 375 Md. 625, 641, 826 A.2d 504, 513 (2003); *Under Armour, Inc. v. Ziger/Snead, LLP*, 232 Md. App. 548, 552, 158 A.3d 1134, 1136 (2017). "Maryland courts interpreting written contracts have long abided by the law of objective contract interpretation, which specifies that 'clear and unambiguous language' in an agreement 'will not give way to what the parties thought the agreement meant or was intended to mean.'" *Urban Growth Prop. Ltd. P'ship v. One W. Balt. St. Assocs. LLC*, No. 882, Sept. Term, 2015, 2017 WL 526559, at *5 (Md. Ct. Spec. App. Feb. 9, 2017) (citation omitted) (unpublished); *see Cochran*, 398 Md. at 16, 919 A.2d at 709; *Huggins v. Huggins & Harrison, Inc.*, 220 Md. App. 405, 417, 103 A.3d 1133, 1139 (2014) (internal quotations and alteration omitted). Therefore, the court's "task … when interpreting a contract, is not to discern the actual mindset of the parties at the time of the agreement." *Dumbarton*, 434 Md. at 52, 73 A.3d at 232. Rather, the court is to "'determine from

11

the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated.'" *Id.* (quoting *Gen. Motors Acceptance v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985)).

Contracts "may be subject to rescission on a finding of fraud, duress, undue influence, or negligent misrepresentation in their making, and declaratory judgments may be issued determining the validity of such contracts." *Hale v. Hale*, 66 Md. App. 228, 233, 503 A.2d 271, 274, *cert. denied*, 306 Md. 118, 507 A.2d 631 (1986); *accord Tung v. Peters*, AW-09-576, 2009 WL 5206627, at *3 (D. Md. Dec. 23, 2009) (citing *Hale*). In addition, a contract may be invalidated if it is procedurally or substantively unconscionable. *See Stewart v. Stewart*, 214 Md. App. 458, 478, 76 A.3d 1221, 1232 (2013); *Freedman v. Comcast Corp.*, 190 Md. App. 179, 207-08, 988 A.2d 68 (2010); *see also* 5A Alan J. Jacobs & Mary Babb Morris, *Unconscionable Contracts; Contracts of Adhesion*, M.L.E. § 53 (2019) ("A court may invalidate a contract term as unconscionable if both procedural and substantive unconscionability are present.").

"Maryland contract law on unconscionability contains two components, a procedural and substantive aspect." *Dieng v. College Park Hyundai*, DKC-09-0068, 2009 WL 2096076, at *5 (D. Md. July 9, 2009). "'The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.'" *Ratliff v. CoStar Realty Information, Inc.*, DKC-11-0813, 2011 WL 2680585, at *5 (D. Md. 2011) (quoting *Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 603, 894 A.2d 547, 561 (2006)) (alteration in *Ratliff*).

In *Carlson v. General Motors Corp.*, 883 F.2d 287, 296 n.12 (4th Cir. 1989), the Fourth Circuit distinguished between procedural and substantive unconscionability:

> Substantive unconscionability involves those one-sided terms of a contract from which a party seeks relief (for instance, "I have the right to cut off one of your

child's fingers for each day you are in default"), while procedural unconscionability deals with the process of making a contract—"bargaining naughtiness" (for instance, "Just sign here; the small print on the back is only for our standard form"). Each of these branches of unconscionability has common-law cousins; procedural unconscionability looks much like fraud or duress in contract formation, and substantive unconscionability reminds us of contracts or clauses contrary to public policy or illegal.

(quoting J. White & R. Summers, *Uniform Commercial Code* § 403, at 186 (3d ed. 1988) (footnote omitted)).

Furthermore, "it is well established in Maryland[] that '[a]n unconscionable contract involves extreme unfairness, made evident by (1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party.'" *Ohio Learning Centers, LLC v. Sylvan Learning, Inc.*, RDB-10-1932, 2012 WL 1067668, at *7 (D. Md. Mar. 27, 2012) (quoting *Barrie v. Sch. v. Patch*, 410 Md. 497, 517, 933 A.2d 252, 394 (2007)) (alteration in *Ohio Learning Centers*).

## C.

In accordance with the pleading standards established by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), plaintiff's Complaint is rather vague. It provides no information as to how or where plaintiff sustained her injuries, the nature or severity of her condition, the date of onset of the condition, or the treatment she received. Moreover, of particular relevance here, the particulars of plaintiff's underlying dispute with Aetna are not entirely apparent. But, it is clear that plaintiff was dissatisfied with Aetna's resolution of her disability claim. In any event, Aetna does not argue that the Complaint's allegations are legally insufficient. And, the Court is satisfied that the information is sufficient to resolve the Motion.

Aetna asks this Court to enforce the parties' settlement agreement. It asserts: "It is not justifiable to set aside a valid settlement agreement because a party has second thoughts about

accepting a settlement offer." ECF 19-1 at 3. According to Aetna, "there is no question" that the settlement agreement with Jones was binding. *Id.* She executed the Release, was paid the agreed-upon sum and, in return, agreed to file a notice of dismissal, with prejudice. *Id.* Moreover, Aetna contends that the burden is on Jones to prove that "the agreement was reached because of fraud or by a mutual mistake under which all parties to the agreement acted, thus resulting in an invalid agreement." *Id.*

In her Opposition, Jones does not dispute that the parties reached a settlement agreement. Nor does she challenge the terms. And, equally significant, she does not contest the assertion by Aetna that she executed the Release, cashed the settlement check, and agreed to dismiss the case. And, significantly, she does not allege fraud, duress, or unconscionability. Indeed, it is uncontroverted that Aetna told plaintiff that if she settled, she could not refile her suit. ECF 19-4 at 3. And, the Release also made known to plaintiff that she was relinquishing her claims.

After the parties reached a settlement, plaintiff had a medical appointment. At that time, she learned that she "may" need further treatment. ECF 26 at 1. She asserts, ECF 26 at 1: "I have since had additional medical evidence indicating I *may* need additional medical treatment for at least an additional year." (Emphasis added).

Defendant cites, *inter alia*, the case of *Kimmel v. Safeco Ins. Co.*, 116 Md. App. 346, 363, 696 A.2d 482, 490 (1977). There, the Maryland Court of Special Appeals (Hollander, J.) addressed the doctrine of accord and satisfaction. The court determined that the doctrine of accord and satisfaction barred the plaintiff in that case from pursuing a claim for the same occurrence for which she had already accepted a payment made in full satisfaction of the claim, and with knowledge that, if accepted, the claim would be extinguished.

The case of *Pasternak & Fidis, P.C. v. Recall Total Information Management, Inc.*, 95 F. Supp. 3d 886, 982 (D. Md. 2015), is also instructive. There, Judge Grimm noted that, with respect to a check, a party "needs to act affirmatively to cash or deposit it, thereby indicating acceptance…." In that circumstance, accord and satisfaction is applicable. That is precisely what occurred here.

### III. Conclusion

This is not a case in which Aetna rushed to settle with plaintiff before she was in a position to gain knowledge of her condition. The record reflects that plaintiff was treated as early as December 2017, about 18 months before the settlement was reached in July 2019. She initiated a lawsuit because she was dissatisfied with Aetna's disposition of a disability claim. Thereafter, Aetna sought to settle and plaintiff agreed.

Plaintiff subsequently changed her mind. However, buyer's remorse is not a valid basis to set aside the settlement agreement. Plaintiff accepted payment. Moreover, when plaintiff accepted payment, it was with knowledge that it was in full satisfaction of her claim. And, under the terms of the Release, which she executed, plaintiff agreed to relinquish any claim based on an unforeseen change in circumstances.

For the foregoing reasons, Aetna's Motion is granted. An Order follows.

Date: April 6, 2020 /s/
Ellen Lipton Hollander
United States District Judge